

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**Signed April 30, 2018**                                        **United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Matrix Broadcasting, LLC, et al., | § | Case No. 18-31045 |
| | § | |
| Debtors. | § | Jointly Administered |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF
FINAL ORDER AUTHORIZING THE USE OF CASH
COLLATERAL AND GRANTING CERTAIN ADEQUATE PROTECTION**

Considering the *Motion for Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Certain Adequate Protection in Connection Therewith* (the "**Motion**")[1] filed by Matrix Broadcasting, LLC ("**Matrix**"), and Matrix Broadcasting Holdings, LLC ("**Holdings**" and, together with Matrix, the "**Debtors**"), the debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases, which came before the Court for an expedited "first day" hearing on March 29, 2018; and considering the *Interim Order Authorizing the Use of Cash Collateral and Granting Certain Adequate Protection* [Docket No. 30] (the "**Interim Order**"); and considering the representations of counsel and the evidence presented at the final hearing on the Motion on April 25, 2018, the Court hereby makes the following findings of fact

---

[1] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion.

and conclusions of law (the "***Findings and Conclusions***"), subject only to the timely filing of a Challenge in accordance with the Challenge Provisions set forth in the Court's *Final Order Authorizing the Use of Cash Collateral and Granting Certain Adequate Protection* (the "***Final Order***"):

1. The Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Proper and adequate notice of the Motion has been given and no other or further notice is necessary.

3. On March 27, 2018 (the "***Petition Date***"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2] No request has been made for the appointment of a trustee or examiner and no official committee has yet been appointed.

4. Matrix owns and operates those two radio stations, WZSR(FM), Woodstock, IL (105.5 FM, "The Star"), and WFXF(FM), Dundee, IL (103.9 FM, "The Fox") (together, the "***Stations***").

5. The Debtors are party to that certain Credit Agreement, dated May 9, 2014, between Matrix, as borrower, Holdings, as guarantor and additional loan party, Atalaya Administrative LLC ("***Atalaya***"), as administrative agent, and certain other lenders party thereto (the "***Senior Lenders***"), pursuant to which the Senior Lenders made a loan (the "***Term Loan***") to the Debtors in the original principal amount of $5,263,546.10. The purpose of the Term Loan was to finance Matrix's acquisition of the Stations.

6. The Term Loan is secured by first priority liens on and security interests in substantially all the Debtors' assets, including the proceeds derived from any sale or transfer of, or transfer of control over, the Federal Communications Commission broadcast licenses issued to Matrix Broadcasting, LLC. Those liens are reflected in UCC-1 financing statements duly recorded by

---

[2] Unless otherwise noted, section (§) references herein are to title 11 of the United States Code (the "***Bankruptcy Code***").

Atalaya with the Delaware Secretary of State on April 18, 2014, at File Nos. 20141532159 and 20141532167.

7. Holdings guaranteed repayment of the Term Loan on the terms set forth in the Guaranty and Collateral Agreement executed contemporaneously with the Credit Agreement.

8. As additional credit support for the Term Loan, Citizens Bank, N.A., issued an irrevocable standby letter of credit (the "***Letter of Credit***"), dated February 26, 2016, in the amount of $1,452,000 for the account of Alpha Media LLC in favor of Atalaya. After the Petition Date, Atalaya drew the Letter of Credit and applied the proceeds to partially pay down the balance of the Term Loan. Accordingly, as of the date hereof, the outstanding balance due under the Term Loan is not less than $2,694,341.74, exclusive of that certain Premium payable pursuant to Article IV of the Credit Agreement and all other applicable fees and charges, which Atalaya reserves the right to seek in connection with its claim in these cases and add to the unpaid balance of the Term Loan.

9. The Credit Agreement and other documents evidencing the Term Loan are referred to herein as the "Loan ***Documents***", and the liens and security interests securing the Term Loan are referred to herein as the "***Prepetition Liens***."

10. As of the Petition Date, the Debtors were current in their payment obligations under the Loan Documents, and no known Event of Default (as defined in the Credit Agreement) had occurred under the Loan Documents as of the Petition Date.

11. The Debtors' obligations under the Loan Documents are secured by valid, binding, enforceable, and unavoidable Prepetition Liens on substantially all of the Debtors' assets, all cash, cash equivalents, and other proceeds of such collateral that constitute "***Cash Collateral***" as that term is defined in § 363.

12. The Loan Documents are valid and enforceable against the Debtors in accordance with their terms, are not subject to any offset, defense, claims, counterclaims or any other diminution of any type, kind or nature whatsoever, and are not subject to avoidance pursuant to applicable state or federal laws.

13. The Term Loan matured on March 31, 2018 and all of the amounts owing to the Senior Lenders pursuant to the Loan Documents are due and owing, are legally binding and enforceable obligations of the Debtors, and are not subject to any offset, defense, claims, counterclaims or any other diminution of any type,

kind or nature whatsoever, and no portion of such obligations, or any amount previously paid by the Debtors to Atalaya or the Senior Lenders is subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

14. The Prepetition Liens constitute valid, binding, and properly perfected first-priority liens that are not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

15. The Debtors do not have any existing claims or causes of action for breach of contract or other liabilities, whether liquidated or unliquidated, direct or indirect, and whether arising under state or federal law (including the Bankruptcy Code) against Atalaya or the Senior Lenders, arising from the relationship between the Debtors and Atalaya and/or the Senior Lenders.

16. The Debtors have an immediate and critical need to use Cash Collateral to continue the operation of their business and to effectuate a plan of reorganization. Without use of such funds, the Debtors will not be able to pay their direct operating expenses and obtain goods and services needed to carry on their business during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estates. At this time, the Debtors' ability to use Cash Collateral is vital to the confidence of the Debtors' vendors, advertisers, employees, stakeholders, and other parties in interest, and to the preservation and maintenance of the going concern value of the Debtors' estates.

17. Atalaya has consented to the Debtors' continued use of Cash Collateral in accordance with these Findings and Conclusions, the budget attached to the Final Order, and on the terms and conditions set forth in the Final Order. Atalaya and the Senior Lenders have not agreed to any further use of Cash Collateral for any other purpose except as set forth herein and in the Final Order. In consideration of such usage, Atalaya and the Senior Lenders are entitled to adequate protection of their interests in the Cash Collateral as permitted under § 361.

18. Entry of the Final Order is in the best interests of the Debtors, their estates, and creditors, and good cause has been shown to exist for entry of the Final Order based on these Findings and Conclusions. Among other things, the Final Order will provide the Debtors with the cash necessary to maintain their business operations and preserve the going concern value of their business and assets during the pendency of their reorganization efforts in chapter 11.

19. The Debtors and Atalaya represent that they have negotiated the Cash Collateral usage and adequate protection granted in the Final Order in good faith and at arm's length, and declare that the terms of the Final Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

20. Each of the foregoing findings by the Court will be deemed a finding of fact if, and to the extent, that it contains factual findings and a conclusion of law if, and to the full extent, that it makes legal conclusions.

# # # END OF ORDER # # #

**Submitted by:**

Michael P. Cooley (TX Bar No. 24034388)
Keith M. Aurzada (TX Bar No. 24009880)
Lindsey Robin (TX Bar No. 24091422)
BRYAN CAVE LEIGHTON PAISNER LLP
2200 Ross Avenue, Suite 3300
Dallas, Texas 75201
(214) 721-8000 (Telephone)
(214) 721-8100 (Facsimile)

*Proposed* Attorneys for the Debtors